UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ELIZABETH WATERMAN,**<br><br>*Plaintiff,*<br><br>v.<br><br>**FORTUNE MEDIA (USA) CORPORATION,**<br><br>*Defendants,* | **COMPLAINT FOR DAMAGES BASED ON COPYRIGHT INFRINGMENT**<br><br>**Demand for Jury Trial** |

Plaintiff Elizabeth Waterman, ("Waterman" or "Plaintiff") for her complaint against Defendant Fortune Media (USA) Corporation ("Fortune" or "Defendant,") by and through its undersigned counsel, alleges upon personal knowledge as to its own conduct, and on information and belief based on the investigation of Plaintiff's counsel, as to all other conducted alleged herein, as follows:

## I. INTRODUCTION

1. This is a civil action for copyright infringement committed by one of the world's most recognizable business and finance magazines, which wrongfully copied, distributed, and displayed a copyrighted photograph owned by Plaintiff, a freelance photographer.

## II. THE PARTIES

2. Plaintiff Elizabeth Waterman is a freelance fine arts photographer based in Los Angeles, California. Waterman is the sole owner and copyright holder of a photograph (the "Photo") that was copied, distributed, displayed, or otherwise used by Defendants in violation of Plaintiff's exclusive rights under the Copyright Act.

1

3. Defendant Fortune Media (USA) Corporation is a foreign business corporation (NY DOS ID: 5461622) that owns and operates Fortune Magazine and maintains its principal place of business at 40 Fulton Street, New York, NY 10038.

4. Whenever in this complaint it is alleged that Defendant committed any act or omission, it is meant that Defendant's officers, directors, vice-principals, agents, servants, directors, executives, management, or employees, subsidiaries, or affiliates committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of Defendant's officers, directors, vice-principals, executives, management, agents, servants, or employees.

## II. JURISDICTION AND VENUE

5. This is a civil action for copyright infringement under the Copyright Act of 1976 (the "Copyright Act" or the "Act") and 17 U.S.C. §§ 101 *et seq.* and 505 *et seq.*

6. This Court has original subject matter jurisdiction over all claims pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (copyrights).

7. This Court has personal jurisdiction over Defendant because it maintains its corporate headquarters in New York and in this District. Defendant availed itself of the privileges of conducting business in this District and the State of New York and incurred benefits from the alleged infringement, such that this Court's assertion of jurisdiction over Defendants does nothing to offend traditional notions of fair play and due process.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 35 N.Y.C.P.L.R. §§ 302(a)(1)-(3) because Defendant (1) committed copyright infringement (2) in

and expressly aimed at the forum state of New York (3) and caused harm in this District to Plaintiff.

9. Venue is further proper in this District pursuant to 28 U.S.C. § 1400(a) (venue for copyright cases) because Defendant is a corporation headquartered in this District.

### IV. FACTUAL ALLEGATIONS

**A. The Importance of US Copyright and Bundle of Rights**

10. Copyrights are the legal title to intellectual property by which creators of original works, such as documentary films, protect their exclusive moral and economic rights to exploit those works.

11. Respecting and defending the financial value and exploitation rights of creators' copyrighted works is a bedrock of US democracy, considered so important that the Founders enshrined the U.S. Constitution with specific references to copyrights, and which expressly gave Congress the power to "promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. Article I, Section 8. "Copyright law encourages people to create original works and thereby 'ultimately serves the purpose of enriching the general public through access to creative works.'" *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 526 (1994).

12. The United States Supreme Court found that by "establishing a marketable right to the use of one's expression, copyright supplies the economic incentive to create and disseminate ideas." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 558 (1985).

13. Section 106 of the Copyright Act (the "Act") grants copyright owners the exclusive economic rights and control for value of their works. The Act makes it illegal to reproduce, create derivative works from, distribute, publicly perform, or publicly display

3

copyrighted work except in limited instances, and provides for damages if any of these rights are infringed.

**B. Background on Plaintiff & the Photo**

14.     Plaintiff Elizabeth Waterman is a freelance, award-winning, fine arts photographer based in Los Angeles. Her distinctive photographs explore female sexuality, dancers, drag queens, adult film actors, and portraits of artists. Her extensive body of work encompasses celebrity, fine art, advertising, fashion, portraiture and editorial photography.

15.     Plaintiff earns a living, in part, from licensing her copyrighted photographs, including to commercial media entities such as Defendant.

16.     Plaintiff maintains a public-facing website where she, *inter alia*, promotes her body of work and solicits licensing offers for that work.[1]

17.     Plaintiff is the author of the copyrighted Photo at issue in this case, seen here:



**C.  Defendant's Wrongful and Infringing Conduct**

---

[1] https://elizabethwaterman.com/

4

18. In early July 2024, Plaintiff discovered her copyrighted Photo published within two different articles posted to Defendant's commercial website, www.fortune.com, without Plaintiff's permission,[2] as reproduced here:



19. Upon reviewing her business records, Plaintiff could not locate any record that Defendant licensed her Photo.

20. Plaintiff subsequently contacted Defendant regarding the unauthorized uses and, despite multiple requests throughout July and August 2024 for Defendant to produce a license, Defendant failed to do so.

21. While both of Defendant's uses of the Photo credit Plaintiff, Plaintiff is informed and believes that this accreditation was intended to give Defendant's readers the false impression that their use of Plaintiff's Photo was lawful when it was not.

---

[2] *Here's Another Big Sign the Coal Industry is Burning Out*, by Lucinda Shen, available at: https://fortune.com/2016/03/21/coal-losing-lending-credit/; and *The latest business buzzword? 'Decarbonization'*, by Adam Lashinsky, available at: https://fortune.com/2015/09/29/utilities-edison-google-decarbonization/

5

22. The absence of Plaintiff's Photo from the Fortune articles in question would not have affected their content, and thus, Defendant used Plaintiff's Photo solely to enhance the value of its own work without authorization.

23. By using the Photo without a license or permission from Plaintiff, and without notifying Plaintiff of the uses, Defendant deprived Plaintiff of the opportunity to negotiate a reasonable license fee for Fortune's uses of the Photo.

24. Had Defendant afforded Plaintiff the opportunity to negotiate, Plaintiff would have required two distinct licenses and corresponding fees for the Photo's usage in two distinct articles on www.fortune.com.

25. Despite being unable to produce a license authorizing its uses of Plaintiff's Photo, and despite being aware of Plaintiff's objections and legal position regarding the unauthorized uses, Defendant has failed to remove the infringing content from www.fortune.com, where it remains publicly displayed.

26. Unable to resolve its claims against Defendants, Plaintiff has been forced to initiate litigation, incurring additional and unnecessary legal costs.

27. By exploiting (and continuing to exploit) Plaintiff's copyright Photo without license, permission, or legal excuse, and with full knowledge that such authorization was required by law, Defendant has willfully infringed Plaintiff's rights in violation of the Copyright Act and caused damages in an amount to be determined at trial.

**D. Background on Defendants**

28. Defendant publishes the storied Fortune Magazine, an American business and finance magazine that boasts a global circulation of over 1 million and a readership of nearly 5 million.[3]

29. In 2023, Defendant generated around $130 million in revenue, marking three straight years of profitability.[4]

30. Upon information and belief, Defendant generates revenue through digital advertisement and subscriptions, the syndication of its original content to other media outlets worldwide, and through its in-house marketing operation, which creates branded corporate marketing content for entities seeking to leverage Fortune's analytics engine and extensive readership.[5]

31. As a media producer and marketer of the highest order, Defendant possesses sophisticated knowledge about intellectual property rights.

32. Upon information and belief, Defendant owns and manages various intellectual properties, including copyrights, trademarks, and patents, and routinely enforce their rights in assets such as brand names, logos, media productions, technologies, and more.

33. Defendant utilizes a copyright disclaimer on each page published to www.fortune.com ("© 2024 Fortune Media IP Limited") further indicating that Defendant understands the importance of copyright protection and intellectual property.

---

[3] https://fortune.com/tag/circulation/

[4] *See*: *Fortune, a Rare Media Success, Faces a New Set of Challenges*, by Mark Sternberg, August 28, 2024, Adweek; *available at*: https://www.adweek.com/media/fortune-media-success-challenges/.

[5] *See, e.g.*, https://fortunemediakit.com/; *see also*: https://fortune.com/business-development/; *see also* https://customcontentonline.com/.

7

34. Defendant also incorporates extensive intellectual property language in its website's "Terms and Conditions of Use,"[6] including examples such as:

> *1. Proprietary Rights.*
> *As between you and us,* ***we own, solely and exclusively, all rights, title, and interest in and to the Web Site, all the content*** *(****including, for example, audio, photographs, illustrations, graphics, other visuals****, video, copy, text, software, titles, Shockwave files, etc.), code, data, and materials thereon, the look and feel, design, and organization of the Web Site, and the compilation of the content, code, data, and materials on the Web Site, including but not limited to any copyrights, trademark rights, patent rights, database rights, moral rights, sui generis rights, and other intellectual property and proprietary rights therein. Your use of the Web Site does not grant to you ownership of any content, code, data, or materials you may access on or through the Web Site.*
>
> *2. Limited License.*
> *You may access and view the content on the Web Site on your computer or other device and, unless otherwise indicated in these Terms and Conditions or on the Web Site, make single copies or prints of the content on the Web Site for your personal, internal use only.* ***Unless otherwise specifically indicated in these Terms and Conditions or on the Web Site, use of the Web Site Services offered on or through the Web Site (collectively, the "Web Site Services"), are only for your personal, non-commercial use****.*
>
> *3. Prohibited Use.*
> *Unless otherwise specifically indicated in these Terms and Conditions or on the Web Site, any commercial or promotional distribution, publishing, or exploitation of the Web Site, or any content, code, data, or materials on the Web Site, is strictly prohibited unless you have received the express prior written permission from our authorized personnel or the otherwise applicable rights holder. Other than as expressly allowed herein or on the Web Site****, you may not download, post, display, publish, copy, reproduce, distribute, transmit, modify, perform, broadcast, transfer, create derivative works from, sell or otherwise exploit any content, code, data, or materials on or available through the Web Site****. You further agree that you may not alter, edit, delete, remove, otherwise change the meaning or appearance of, or repurpose, any of the content, code, data, or other materials on or available through the Web Site, including, without limitation, the alteration or removal of any trademarks, trade names, logos, service marks, or*

---

[6] https://fortune.com/terms-of-use/

8

> *any other proprietary content or proprietary rights notices. You acknowledge that you do not acquire any ownership rights by downloading or otherwise using any copyrighted material from or through the Web Site.* ***If you make other use of the Web Site, or the content, code, data, or materials thereon or available through the Web Site, except as otherwise provided above, you may violate copyright and other laws of the United States****, other countries, as well as applicable state laws and may be subject to liability for such unauthorized use.*

35. Because Defendant is a sophisticated media production and publishing entity that regularly contemplate the creation, ownership, display, distribution, marketing, licensing, sale, and enforced protections of intellectual property, it was aware, or at minimum, should have been aware, of Plaintiff's rights as a copyright holder and Defendant's responsibilities under the Copyright Act when they wrongfully used Plaintiff's copyrighted Photo.

36. By exploiting Plaintiff's copyrighted Photo without a license, permission, or legal excuse, and with knowledge that such authorization was required by law, Defendant has willfully infringed Plaintiff's rights in violation of the Copyright Act and caused damages in an amount to be determined at trial.

## V. CAUSE OF ACTION

**INFRINGEMENT OF COPYRIGHT PURSUANT TO 17 U.S. CODE § 106**

37. Plaintiff incorporates herein by reference each and every allegation contained in each paragraph above.

38. Plaintiff is, and at all relevant times has been, the copyright owner with exclusive rights under United States copyright with respect to the Photo, which bears registration number VA 2-211-185 and an effective date of June 10, 2020.

39. Among the exclusive rights granted to Plaintiff under the Copyright Act are the exclusive rights to reproduce (copy), distribute, display, perform, and create derivative works from its copyrighted Photo per 17 U.S.C. §§ 106.

40. As more fully described above, Defendants, without Plaintiff's permission or consent, used Plaintiff copyrighted Photo within two articles published to Defendants website.

41. Defendant's uses of the Photo deprived Plaintiff of a license fee for the use.

42. Defendants misleadingly credited Plaintiff as having willingly provided the Photo, more likely than not for the purpose of giving the public the impression that the use was legitimate.

43. Defendant has violated Plaintiff's exclusive right to reproduce, distribute, publicly display the Photo.

44. Defendants never asked permission nor paid a licensing fee for the use of Plaintiff's copyrighted Photo despite Plaintiff operating a public website where, *inter alia*, she solicits offers from potential licensors and can be contacted about such.

45. Defendants never asked permission nor paid a licensing fee for the use of Plaintiff's copyrighted Photo despite Defendants knowing Plaintiff to be the Photo's author.

46. Defendant never sought permission or paid a licensing fee for the use of Plaintiff's copyrighted Photo, despite Defendant knowing that Plaintiff is a professional photographer who earns a living, in part, by licensing her work, and who maintains an open line of communication specifically for parties like Defendant to contact her regarding licensing.

47. To her knowledge, Plaintiff never provided authorization to Defendant or its partners, agents, members, licensees, affiliates, employees, contractors, customers, subscribers, or retailers to use, copy, publicly display, distribute, license, manipulate, or otherwise exploit the Photo.

48. Defendant has not been able to show that Plaintiff ever provided authorization to Defendant or their partners, agents, members, licensees, affiliates, employees, contractors,

customers, subscribers, or retailers to use, copy, publicly display, distribute, license, manipulate, or otherwise exploit the Photo.

49. Plaintiff is informed and believes that the aforementioned acts of infringement were reckless and demonstrated a complete disregard for, and indifference to, Plaintiff's copyrights and exclusive rights under copyright.

50. Plaintiff has suffered damages as a direct and proximate result of Defendant's infringement of the copyrighted Photo.

51. As a result of Defendant's infringement of Plaintiff's exclusive rights under copyright, Plaintiff is entitled to an award of actual damages and profit pursuant to 17 U.S.C. § 504(b), or statutory damages pursuant to 17 U.S.C. § 504(c), with amounts will be proved at trial.

52. Defendant's conduct has caused, and any continued infringing conduct will continue to cause, irreparable injury to Plaintiff, unless enjoined by this Court. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction prohibiting infringement of Plaintiff's exclusive rights in Plaintiff's copyrighted Photo by Defendant and any persons acting in concert with the Defendant.

## VII. JURY TRIAL DEMANDED

53. Pursuant to Fed. R. Civ. P. 38(b), Plaintiff respectfully demands a trial by jury of all the claims asserted in this Complaint so triable.

## VIII. RELIEF REQUESTED

54. WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

    a. Awarding Plaintiff damages derived from the infringing acts, in the maximum amount permitted by law with respect to each instance of Defendant's

      infringing use of the Photo, whether pursuant to actual damages and attributable profits under 17 U.S.C. § 504(b) or statutory damages under 17 U.S.C. § 504(c), including attorneys' fees and costs;

b. Granting Plaintiff injunctive and other equitable relief enjoining Defendant, its respective officers, agents, vendors, servants, and employees, and all those acting in concert from directly or indirectly reproducing, publicly performing, publicly displaying, or distributing the copyrighted Photo;

c. Awarding prejudgment interest to the maximum extent permitted by law;

d. Awarding Plaintiff's attorneys' fees, costs, and expenses in this action pursuant to 17 U.S.C. § 505, if applicable, derived from Defendant's infringing acts; and

e. Awarding such other and further relief as the Court may deem just and proper.

Dated: October 2, 2024.

                          Respectfully submitted,

                          *By: /s/ Bryan Hoben*
                          **HOBEN LAW**
                          Bryan D. Hoben, Esq.
                          1112 Main Street
                          Peekskill, New York 10566
                          347-855-4008
                          bryan@hobenlaw.com

                          *Attorneys for Plaintiff Elizabeth Waterman*